# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHNNIE H. BIDDIE, IV | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-07-090-FHS-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Johnnie H. Biddie, IV, requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id.* § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997), *citing Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991). The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence or substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of [the] evidence must take into account whatever in the

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on February 14, 1970, and was thirty-six (36) years old at the time of the administrative hearing. He has a high school education and has previously worked as a construction worker, punch press machinist, stocker, laborer, well serviceman, welder, printer, shredder/mill laborer, and driver. The claimant alleges he has been unable to work since August 1, 2003, because of osteoarthritis of the knees, status post right total knee replacement, depression, anxiety, and schizophrenia.

**Procedural History**

On September 9, 2003, the claimant protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.[2] The applications were denied. ALJ Richard Kallsnick conducted a hearing and found that the claimant was not disabled on August 23, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that the claimant had the residual functional capacity ("RFC") to perform a limited range of

---

[2] The claimant appeals only the denial of Title II benefits [Docket No. 16, p. 1].

sedentary work (Tr. 21), *i. e.*, that he could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for one hour of an eight-hour work day; sit for six hours of an eight-hour work day; and occasionally bend, squat, crawl, climb and reach. The claimant was further limited with a moderate limitation in his ability to maintain socially appropriate behavior (Tr. 18). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform existing in significant numbers in the regional and national economies, *e. g.*, sewing machine operator, assembler, and miscellaneous laborer (Tr. 20-21).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly develop the record regarding his mental impairment; and (ii) by failing to identify his right arm and shoulder impairments as severe at step two. The undersigned Magistrate Judge finds that neither contention has merit.

The claimant first argues that the ALJ failed to fully develop the record with regard to his mental impairment, *i. e.*, the ALJ lacked sufficient evidence to evaluate his mental impairment and should have recontacted the consulting psychologist for a more complete evaluation or ordered an additional mental evaluation. The record reveals that the claimant was first examined by internist Sidney Williams, M.D., in May 2004, primarily for his physical complaints. Dr. Williams, however, administered the Beck Depression Inventory to the claimant, which indicated he was suffering from moderate depression. The claimant's Hamilton anxiety rating was consistent with severe anxiety. With regard to the claimant's

mental condition, Dr. Williams assessed him with moderate depression disorder, severe anxiety disorder, schizophrenia by history, and multiple personality disorders by history (Tr. 186-88). Shortly after Dr. Williams' examination, non-examining agency psychiatrist Sally Varghese, M.D., completed a Psychiatric Review Technique form evaluating the claimant for affective disorders and anxiety-related disorders. She determined that the claimant had a mild degree of limitation in restriction of daily activities, maintaining social functioning, and maintaining concentration, persistence, or pace. There was insufficient evidence to determine whether the claimant had episodes of decompensation of an extended duration (Tr. 201-14). Based on her findings, Dr. Varghese determined that the claimant's mental impairment was not severe (Tr. 201-14).

Following Dr. Williams' examination, the Social Security Administration referred the claimant to consulting psychologist Dr. Stephanie Crall, Ph.D., for a mental status examination in November 2005. The examination revealed adequate orientation to person and place, contact with reality, remote memory functioning, problem-solving, proverb interpretation, and judgment (Tr. 224-25). Dr. Crall diagnosed the claimant with moderate, chronic Major Depressive Disorder; Generalized Anxiety Disorder; Post Traumatic Stress Disorder in partial remission; and Amphetamine dependence in sustained full remission (Tr. 222-25). She also completed a mental medical source statement in December 2005 and determined that the claimant had only a moderate limitation in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (Tr. 226-29).

An ALJ has broad latitude in deciding whether or not to order a consultative examination. *Hawkins*, 113 F.3d at 1166, *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). A consultative examination may be required when there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record. *Id.* [citations omitted]. *See also Lamb v. Barnhart*, 85 Fed. Appx. 52, 57 (10th Cir. 2003) ("[T]he ALJ must ensure that a sufficient record exists to evaluate [the claimant's] exertional and nonexertional limitations . . . . [T]he ALJ's duty to develop the record may include obtaining additional medical evidence from [the claimant's] treating physicians or ordering a consultative examination if the record does not otherwise contain sufficient evidence upon which to base an RFC finding[.]")[citations omitted] [unpublished opinion]. However, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored [and] . . . may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167-68, *citing Glass v. Shalala*, 43 F.3d 1392, 1394-96 (10th Cir. 1994).

Here, the ALJ met his duty to develop the record by requesting the consultative examination of the claimant by Dr. Crall. There was nothing in Dr. Crall's examination findings that suggested additional testing or examination of the claimant's mental condition was warranted. *Id*. at 1166-67. Also, the ALJ determined that the claimant's mental impairment was severe and included limitations in the RFC consistent with the findings by

Dr. Crall on the mental medical source statement, *i. e.*, that the claimant had a moderate limitation in his ability to maintain socially appropriate behavior (Tr. 17-18). Further, the claimant's attorney never specifically requested that any additional tests be performed, that Dr. Crall be recontacted, or that the claimant undergo another mental examination.[3] Thus, the ALJ had sufficient evidence to fully evaluate the claimant's mental impairment and met his obligation to develop the record.

The claimant also argues that the ALJ failed to find his right arm and shoulder impairments severe at step two. The record reveals that the physical evaluations of the claimant's arm, shoulder, wrist, and hands consistently demonstrated a normal range of motion with no limitations, *e. g.*, Tr. 188 ("[The claimant m]aintains and demonstrates preservation of the grip strength at 5/5 bilaterally, demonstrating good ability to manipulate small objects by picking up coins and paperclips during this examination. Thus the agility of the hands and preservation of the ability to oppose the thumb to fingertips for practical useful purposes is present."); Tr. 190, 233 (perfect range of motion measurements for shoulder, elbow, wrist and thumb on both the right and left); Tr. 216 (RFC containing unlimited ability to push and pull hand controls and noting a "normal range of motion in all other joints" than the right knee and "normal use of hands."); Tr. 217, 237, 242 (no manipulative limitations); Tr. 231, 240 ("Motor strength is 5/5 in the biceps, triceps, and

---

[3] At the administrative hearing, the claimant's attorney indicated that the mental examination "might not have limited [the claimant] quite enough based on [the attorney's] interactions with him, but that's neither here nor there." (Tr. 260-61). The claimant's attorney made no request for additional testing or for a second consultative examination at that point in the hearing, nor did he raise the issue when the ALJ concluded the hearing and asked the attorney if there was "anything further." (Tr. 292).

handgrip bilaterally" and shoulder, elbow, wrist and finger/thumb joints are all "within normal limits bilaterally."); and Tr. 234 (noting ability to manipulate small objects and grasp tools effectively). However, the claimant's testimony at the administrative hearing indicated that he had some problems with his right shoulder and right hand as the result of a car wreck. He occasionally dropped objects with his right hand, but the claimant generally had no difficulty raising his right arm over his head or out in front of his body (Tr. 268-69).

A claimant has the burden of proof at step two of the sequential analysis to show that he has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137 (1987). This determination is "based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams*, 844 F.2d at 750. Although "the claimant must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the claimant's step-two burden only requires a "de minimis" showing of impairment. *Hawkins*, 113 F.3d at 1169, *citing Williams*, 844 F.2d at 751. A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352.

In his decision, the ALJ briefly mentions the claimant's testimony that he had some problems with his right shoulder and arm, but he discounts the claimant's complaints based on the medical evidence (Tr. 19-20). Although step two only requires a "de minimis"

showing of impairment, the burden of making such a showing is on the claimant. Here, other than his testimony, there is no evidence in the record suggesting that the claimant has an impairment in his shoulder or arm. *See Hawkins*, 113 F.3d at 1167 ("[T]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.") [citations omitted]. Because the claimant failed to show how such an impairment would more than minimally affect his ability to work, *see Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) (holding that the mere presence of a condition, without proof that the condition limits basic work activities, is insufficient for a step-two showing), the undersigned Magistrate Judge finds this contention is without merit.

## Conclusion

The undersigned Magistrate Judge FINDS that the decision of the Commissioner is supported by substantial evidence and that correct legal standards were applied, and therefore RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be AFFIRMED. The parties are herewith given ten (10) days to file any objections with supporting briefs. Failure to object to the Report and Recommendation will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 1st day of August, 2008.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**